IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| PATRICK EUGENE SANDERS, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:13-CV-895-O |
| § | |
| WILLIAM STEPHENS, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Patrick Eugene Sanders, a state parolee, against William Stephens, Director of the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), Respondent.[1] The prior referral to the Magistrate Judge is withdrawn. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be dismissed as time-barred, in part, and denied, in part.

**I. BACKGROUND**

On August 20, 2008, a jury found Petitioner guilty of burglary of a building in the 372nd District Court of Tarrant County, Texas, Case No. 1097492D, and the next day assessed his punishment at 17 years' imprisonment. Admin. R., Clerk's R. 67, 71-72, ECF No. 11, Attach. #5 (DA5-CR 2-08-301). Petitioner was charged with burglarizing a church in Fort Worth, Texas. In affirming the trial court's judgment on September 30, 2010, the state court of appeals summarized

---

[1]Telephonic communication with TDCJ confirmed that Petitioner was paroled on April 26, 2012.

the evidence as follows:

>Officer Kaare G. Martin testified that about 4:50 a.m. on January 14, 2008, he received a burglar alarm call regarding the Greater St. Paul Missionary Baptist Church in Fort Worth, Tarrant County, Texas. He testified that the church is in a residential area and that it did not appear that it was in use by its congregation when he arrived. Martin parked on the west end and then exited his car to explore the building. He observed no signs of forced entry. Martin could see inside the building through the exterior glass door and then through a window in the interior wooden door on the northeast side. Martin saw a light on in the kitchen area, which was on the southeast corner of the building. In that area, about forty-five feet away from his vantage point, Martin also saw a tall male putting a white plastic bag inside a brown paper bag. The man was facing Martin. The brown paper bag was on the table. Martin testified that it appeared that the man was trying to take items. Martin walked around to the south side of the building, where he saw light through an open window. Martin could not see anyone through the window, but he heard "rustling around noises." Martin radioed for backup and waited underneath the window for backup to arrive. He forgot to turn his radio down until after his radio made a "kind of loud" noise.
>
>Martin's backup, Officer Fincher, arrived. Martin then saw the kitchen light go out. He moved to the east side of the building where there was an exterior door. Martin heard what sounded like a lock being unlatched, and then he saw the person he had seen putting the plastic bag into the brown paper bag, Appellant, exit the building through that door. The police had not announced their presence, nor had they done anything to force Appellant out of the building.
>
>Martin was between eight and ten feet from Appellant when he left the building. Martin testified that it had been pretty dark. Martin observed Appellant for "[m]aybe thirty seconds" and did not see a small cut on Appellant's neck. Martin ordered Appellant to the ground. Appellant did not have any property on his person that had been removed from the church, nor did he have any weapons. Officer Fincher came around the building and took Appellant into custody.
>
>Martin then went into the kitchen area where he had seen the light on. He saw the brown paper sack lying on the floor behind the table. He looked inside it and found a white plastic bag. Inside the plastic bag, he saw two bags of potato chips and one large canister of powdered lemonade. He testified that the white plastic bag and the brown paper bag were the same ones that he had seen in Appellant's hand a few minutes earlier. Martin testified that he noticed that the kitchen window was still open and also said that the police searched throughout the church but found no other person, no damage, and nothing else out of the ordinary.

2

> Reverend Grady Anderson, senior pastor of the church, testified that the church was at the eastern edge of the Poly neighborhood and the western edge of the Stop Six neighborhood. He recalled getting a call from the church's burglar alarm company on January 14, 2008, indicating that zone four, which contains the sanctuary, had been breached. Anderson called the police and then met them at the church about twelve minutes later. By that time, the police had apprehended Appellant.
>
> Anderson testified that the church was not being used by its members on that early Monday morning, that the security alarm had been activated, and that no one had permission to be in the church at that time. He specifically testified that Appellant did not have permission to be in the church. Anderson also testified that the purpose of the kitchen was to prepare food for the church's "social functions, for funerals, for vacation Bible school, or for Thanksgiving dinners and other occasions like that." Anderson further testified that the church ran a food bank on site. Finally, he testified that church members and outside donors paid for all the food.

Admin. R., Mem. Op. 3-5, 9, ECF No. 11, Attach. #4 (DA4-mem. op.).

Petitioner did not file a petition for discretionary review. Pet. 3, ECF No. 1. He did however file a series of state habeas applications challenging his conviction and/or sentence. The first four such applications were filed and dismissed by the Texas Court of Criminal Appeals in 2008 because Petitioner's direct appeal remained pending. Admin. R., State Habeas R. 2, 12 ECF No. 13, Attach. #4 (SH4-writ WR-39,054-33); Admin. R., State Habeas R. 2, 12, ECF No. 13, Attach. #5 (SH5-writ WR-39,054-34); Admin. R., State Habeas R. 2, 12 ECF No. 13, Attach. #8 (SH8-writ WR-39,054-35); Admin. R., State Habeas R. 2, 15, ECF No. 14, Attach. #5 (SH15-writ WR-39,054-36).[2] The fifth such application was filed on January 3, 2011, and denied by the Texas Court of Criminal Appeals on September 12, 2012, without written order on the findings of the trial court. Admin. R.,

---

[2]Typically, a state habeas application is deemed filed when placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). Petitioner's state habeas applications do not state the date Petitioner placed the documents in the prison mailing system, however the "Inmate's Declaration[s]" on the applications reflect the dates Petitioner signed the documents. The Court deems the state applications filed on those dates.

State Habeas R. 2, 16, ECF No. 14, Attach. #8 (SH18-writ WR-39,054-42). Finally, the sixth such application was filed on September 6, 2013, and dismissed by the Texas Court of Criminal Appeals on October 30, 3013, as a subsequent petition under Texas Code of Criminal Procedure 11.07, § 4. Admin. R., State Habeas R. 2, 15, ECF No. 14, Attach. #5 (SH15-writ WR-39,054-36); Tex. Code Crim. Proc. Ann. art. 11.07, § 4 (West Supp. 2012).

This federal petition for habeas relief challenging his conviction and sentence was filed on November 4, 2013. Pet. 1, ECF No. 1. Petitioner raises four grounds for relief: (1) evidence favorable to the defense was withheld by the trial court, (2) his sentence was illegally enhanced, (3) he recieved ineffective assistance of trial counsel, and (4) he is actually innocent of the offense based on new witness evidence. Pet. 7-8, ECF No. 1. Respondent contends that the petition is untimely as to grounds one through three and that ground four is not cognizable on federal habeas review or, alternatively, procedurally defaulted. Resp't's Answer 7-12, ECF No. 15.

## II. LEGAL DISCUSSION

### A. Statute of Limitations

28 U.S.C. § 2244(d) imposes a one-year statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. Section 2244(d) provides:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

4

>    (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>    (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Petitioner's first three grounds involve matters relevant to his trial; thus Petitioner should have known of the basis of those claims at or near the time of trial. Therefore, under subsection (A) applicable to such claims, the limitations period begins to run on the date on which the judgment of conviction becomes final by the conclusion of direct review or, as in this case, the expiration of the time for seeking direct review. For purposes of this provision, the judgment of conviction became final and the one-year limitations period began to run upon expiration of the time that Petitioner had for filing a petition for discretionary review in the Texas Court of Criminal Appeals on Monday, November 1, 2010,[3] and closed on November 1, 2011, absent any tolling. *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

Petitioner's first four state habeas applications filed while his direct appeal was pending did not operate to toll the limitations period under § 2244(d)(2). *Larry v. Dretke*, 361 F.3d 890, 894-95 (5th Cir. 2004). His fifth state habeas application, pending 619 days, did toll the limitations period

---

[3] October 30, 2010, fell on a Saturday. Therefore, Petitioner had until Monday, November 1, 2010, within which to file a petition for discretionary review. Fed. R. Civ. Proc. 6(a)(1)(C); Tex. R. App. P. 68.2(a).

5

under the statutory provision, making his federal petition due on or before July 13, 2013. His sixth state habeas application, filed on September 6, 2013, after limitations had already expired, did not however operate to further toll limitations under the statute. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). Therefore, Petitioner's federal petition was due on or before July 13, 2013, unless he is entitled to tolling as a matter of equity.

Equitable tolling is permitted only in rare and exceptional circumstances when an extraordinary factor beyond the petitioner's control prevents him from filing in a timely manner or he can prove that he is actually innocent of the crime for which he was convicted. *McQuiggin v. Perkins*, — U.S. —, 133 S. Ct. 1924, 1928 (2013); *Holland v. Florida*, 560 U.S. 631 , 649 (2010). There is no evidence in the record that Petitioner was prevented in some extraordinary way from asserting his rights in state or federal court, and he presents no new evidence to meet the actual innocence exception.

Petitioner asserts that he received late notice of the denial of his fifth state habeas application because the Texas Court of Criminal Appeals continued to send his mail to the prison after his release and that he is actually innocent of the offense based on newly discovered evidence. Pet'r's Reply 2-8. Even assuming Petitioner first learned of the September 12, 2012, denial of his fifth state habeas application on or about December 12, 2012, such a delay was not such that it constitutes an extraordinary circumstance. *See, e.g., Melancon v. Kaylo,* 259 F.3d 401, 408 (5th Cir.2001) (finding the petitioner not entitled to equitable tolling after a delay of four months); *Coleman v. Johnson,* 184 F.3d 398, 402-03 (5th Cir.1999) (finding the petitioner not entitled to equitable tolling after a delay of six months). Furthermore, he was not diligent even after he actually learned of the denial by waiting nearly eleven months before filing his federal habeas petition on November 4, 2013. This

6

lengthy delay fails to demonstrate a "reasonable" effort on Petitioner's part and mitigates against equitable tolling. *Holland*, 560 U.S. at 653. It is well settled that "[e]quity is not intended for those who sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999).

Finally, Petitioner's new evidence, the "Unsworn Declaration" of Reginald Harris, is not persuasive evidence of his innocence. Apparently, at the time of his arrest, Petitioner gave a recorded statement to the police that he was stabbed in the neck by another man and had retreated to the church to hide and get away from his attacker. Admin. R., State Habeas R. 63, ECF No. 14, Attach. #8 (SH18-writ WR-39,054-42). Petitioner also informed his trial counsel that he entered the church to hide from the attacker, however counsel stated that Petitioner "never gave [her] particulars as to where this assault occurred, why it occurred, who might have seen it, [or] who had assaulted him" and that Petitioner was extremely vague about everything except the small cut on his neck. *Id.* at 64. Several days before trial, Petitioner gave counsel a name of a potential witness to the attack, Reginald Gillery, and a description of Gillery. *Id.* at 66. An investigator for the defense however was not able to locate Gillery or anyone fitting his description in the area designated by Petitioner. *Id*.

In an unsworn statement dated March 22, 2013, Harris states–

> I Reginald Harris, . . . on or about the month of January or February 2008 I was at a house on the corner [of] Lloyd and Ave L. with another fellow named Patrick Sanders[.] At that house Patrick and a man named Mike got into an argument. Patrick decided to leave [and] on his way out the door he was stabbed[] in the neck.
>
> He left running up Avenue L. I didn't see him afterward's [sic]. Year's [sic] later I found out that he had been sent to prison; because he was trying to protect himself; and not steal. If he needed money or anything he could alway's [sic] come to me for help!!!

7

>I will testify to this entire letter in court.

Pet. Ex. G, ECF No. 1.

Even if Reginald Harris was, in fact, the person who witnessed such an attack on Petitioner over five years earlier, Harris was not sure of the month the attack took place and admits he only saw Petitioner "running up Avenue L," which Petitioner states is in the vicinity of the church, after leaving the house. Additionally, counsel points out in her affidavit that Petitioner's claim is not consistent with his behavior observed by the officer in the church kitchen or after he exited the building. Admin. R., State Habeas R. 68, ECF No. 14, Attach. #8 (SH18-writ WR-39,054-42). Simply stated, it cannot be said that it is more likely than not that no reasonable juror would have convicted Petitioner of entering the church with the intent to commit theft in light of Harris's testimony not submitted at trial. *Schlup v. Delo,* 513 U.S. 298, 329 (1995). Petitioner has not demonstrated that he is entitled to equitable tolling of the statute of limitations. Accordingly, Petitioner's federal petition was due on or before July 13, 2013, as to grounds one through four. His petition filed on November 4, 2013, is therefore untimely as to those claims.

### B. Actual Innocence

Respondent contends Petitioner's freestanding claim of actual innocence based on Harris's unsworn statement is not cognizable on federal habeas review or, in the alternative, is procedurally barred because Petitioner's sixth state habeas application, in which he presented the new evidence, was dismissed based on the state's subsequent-application bar. Resp't's Answer 10-12, ECF No. 15. The undersigned agrees that the Supreme Court has not recognized actual innocence as an independent ground for federal habeas corpus relief. *McQuiggin,* 133 S. Ct. at 1931 (citing *Herrera v. Collins,* 506 U.S. 390, 400 (1993)); *Burton v. Stephens*, 543 F. App'x 451, 458 (5th Cir. 2013).

8

Even if such a claim were cognizable, Petitioner has not made a strong showing of actual innocence.

## III. CONCLUSION

For the reasons discussed herein, grounds one, two and three of Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 are **DISMISSED** as time-barred and ground four is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is denied.

**SO ORDERED** on this **19th** day of **May, 2014.**

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**